# Exhibit A

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **League of Women Voters**, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>**U.S. Department of Homeland Security,** *et al.*,<br><br>Defendants. | **Case No. 1:26-cv-3602** |

**DECLARATION OF JUAN PROAÑO**

I, Juan Proaño, pursuant to 28 U.S.C. § 1746, declare that the following statements are true and correct to the best of my knowledge and belief:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, belief, and information.

2. I am the Chief Executive Officer of League of United Latin American Citizens (LULAC), a position I have held since November 2023. In my role as Chief Executive Officer, I oversee the day-to-day operations at LULAC and work to amplify the organization's advocacy initiatives and action-oriented programs.

3. LULAC is the largest and oldest Latino civil rights organization in the United States. Since its founding in 1929, LULAC's mission has been to improve the lives of Latino families throughout the United States. Among many other things, that mission means we work hard to protect the civil rights, including the voting rights, of the Latino community.

4. We also do this work through our local councils across the United States. LULAC is a nationwide, non-profit, non-partisan, membership-based organization. Through community-based programs led by our local councils, LULAC works to advance the voting rights, economic

conditions, educational attainment, and health outcomes of the Latino community. LULAC programs include voter registration drives, as well as education and health promotion events.

5. LULAC and its councils have been parties in voting rights litigation in defense of the Latino community. See, e.g., *LULAC v. Perry*, 548 U.S. 399 (2006); *LULAC Kan. v. Cox*, No. 2:18-cv-2572 (D. Kan. 2018); *LULAC Ariz. v. Reagan*, No. 2:17-cv-04102 (D. Ariz. 2018).

6. Nationwide, LULAC has over 897,000 members across more than 359 local councils.

7. LULAC has 28 local councils in California. Altogether, LULAC has more than 40,000 members in California, making it one of the states with the most LULAC members in the nation. These members are in cities and towns across the state.

8. LULAC has over 5,700 members in Los Angeles County and at least 5 councils there: Young Professionals, Long Beach, Antelope Valley, UCLA, and USC. Many of these councils focus on expanding educational opportunities for the Latino community.

9. LULAC's California membership is deeply civically and politically engaged. At least 80 percent of our California members are registered to vote. And at least 80 percent of LULAC's members who are registered to vote did so in 2020 and at least 75 percent voted in 2022.

10. At California LULAC's annual state conference, LULAC promotes voting and engages in a voter registration campaign.

11. LULAC has 8 local councils in Washington, and over 5,600 members in Washington. LULAC's Washington membership is also very civically and politically engaged.

12. LULAC also has a significant presence in other jurisdictions that have been the targets of the federal government's election administration efforts, including Nevada, New Jersey, and Washington, D.C.

13. LULAC testifies on state legislation and holds educational events on many issues including voting-related issues. All this work is aimed at empowering the Latino community at the

local, state, and national level and making sure the voices of Latino voters are heard by their elected representatives.

14. LULAC holds get-out-the-vote or "GOTV" programs before elections to encourage its members to vote. For example, LULAC's councils register prospective voters and hold voter registration drives at schools, churches, and other community events. Through these programs, LULAC councils educate their members and other community members about voter registration, in-person voting options, vote-by-mail applications, and vote-by-mail deadlines.

15. California LULAC, Washington LULAC, and local LULAC councils distribute information on how to register to vote, check voter registration status, vote by mail-in ballot, and find polling locations for voters who do not know where they should vote. LULAC also helps voters check their registration status by talking to community members, hosting events, and sharing videos and social media posts, including ones that link to California's voter status tool.

16. Our councils across the country have helped voters register to vote and are now in the midst of encouraging members to vote by mail or at a polling location ahead of the November 3, 2026 election.

17. LULAC also runs an Election Protection Incident Report and Dashboard at https://vamosavotar.org/report, wherein it documents incidents across the country, including reports of voter confusion, intimidation, misinformation, and issues that arise at polling places.

18. LULAC has many members across the country who are naturalized and derived U.S. citizens. These members have files with U.S. Citizenship and Immigration Services due to their or their parent's naturalization process.

19. LULAC has provided public comment on informational policies affecting our members. For instance, LULAC submitted a System of Records Notice comment regarding the government's expansion of the SAVE program, in which we raised concerns about the government's use of

federal databases. In the comment, LULAC noted that federal databases have a long record of misidentifying naturalized citizens and Latino voters.

20. As I understand, only 19 days before Election Day and 10 days after counties began mailing mail ballots to all registered voters, the federal government sued California and Los Angeles County seeking to prevent ballots from being tabulated for approximately 20,000 registered voters in California and to impose additional, unidentified, citizenship verification requirements on those voters. Since then, I understand the federal government has taken additional steps to compel California jurisdictions to take these actions, including sending lists of voters to, and making similar demands of, every other county in California. As I understand it, the government identified these alleged noncitizen voters based on data it collected from statewide voter registration lists and other sources.

21. Similarly, I understand that only 8 days before Election Day and 10 days after early voting began, the federal government demanded the Secretary of State for the State of Washington set aside 400 ballots from individuals the federal government claims are noncitizens. The government identified the alleged noncitizen voters based on data it collected from statewide voter registration lists and other sources.

22. LULAC has members and constituents in both states who are lawfully registered voters. Because the federal government has not provided LULAC with the identities of the voters on these lists, we cannot determine whether our members or the voters we have helped are among those being targeted. That uncertainty is itself causing concern among our members and complicating our voter education efforts.

23. I also understand that there has been public reporting suggesting the federal government may launch similar efforts in other jurisdictions in the coming days. I am concerned that such

efforts may even continue after Election Day with the federal government scrutinizing voter history in an attempt to challenge election results.

24. In my experience working on voting rights and civic engagement, I have not seen the federal government seek changes to how states handle and count ballots on this scale so close to Election Day. These actions have created serious uncertainty for our members and the councils working to help them vote.

25. LULAC plays an important role for its members and constituents in the Latino community and is regarded as a trusted messenger. The government's collection of voter data and recent actions in California and Washington undermine LULAC's reputation because members who registered to vote with LULAC now question LULAC's message to them.

26. LULAC is concerned that the federal government's efforts will cause lawful citizen voters, including some of LULAC's members, to be erroneously removed from the rolls through no fault of their own.

27. Not only do the government's actions harm LULAC's reputation as a trusted community organization, but they also frustrate the core mission of the organization, which has been to educate and encourage its members and constituents to register to vote and vote in the upcoming election.

28. The government's transmission of lists of voter data to states and counties and its demands that states and counties segregate the ballots of identified voters, including its actions in Washington and California, have sowed distrust and confusion and made it more difficult for LULAC to encourage voter confidence and accurately inform voters about the use of voter data and voter security.

29. As a result of the federal government's actions, there is a palpable fear among many Latinos, including LULAC members, about how their votes will be treated. We have heard from members concerned and confused about how their vote will be treated due to the federal

government's policies. They wonder: Will my ballot be separated? Withheld? Put into a "maybe" pile for further consideration? Thrown out? They also do not know how to remedy or "cure" ballots that are improperly segregated.

30. LULAC's councils, staff, and volunteers also are concerned about the criminal repercussions of participating in efforts to help other people register or vote, even when they are doing so lawfully. They are worried that if they unknowingly help someone on one of the federal government's lists to vote, they could be accused of a crime. For instance, council leaders in Washington have specifically expressed concern that participating in GOTV efforts could unintentionally make them accomplices to a crime in the federal government's eyes.

31. Latino voters face particular risks when government agencies rely on incomplete or inaccurate records to determine citizenship status. Common names, inconsistent identifying information, and records that fail to reflect naturalization can lead to mistaken identifications.

32. These concerns are especially serious for naturalized citizens, including LULAC members, whose citizenship status may not be accurately reflected across government databases.

33. As a result, LULAC has been forced, and will continue to be forced, to spend time and money to counteract these effects. LULAC has had to increasingly field concerns from voters who are confused or worried about the government's efforts to obtain voter registration records and segregate ballots, some of whom are wondering whether their personal information could be used to target them or whether they are still eligible to vote.

34. LULAC has also been forced to increasingly serve as a sounding board for our councils and members to clear up misinformation, answer questions, and reassure people who are worried about their voter registration status.

35. We have also had to create and publish additional messaging to address the increased confusion.

36. In the past week alone, LULAC staff have spent dozens of staff hours responding to concerns about the federal government's actions, coordinating with state council leaders, consulting legal partners, and preparing additional voter education materials. That is time we would otherwise have spent on our planned Election Day voter outreach and protection activities.

37. The time and resources that LULAC is spending to address confusion over the government's actions is taking away resources from our regular voter engagement work. We have been forced to pivot away from registration and GOTV efforts toward education about voter eligibility and ameliorating voters' fears that they may be targeted by the federal government or that their votes may not be counted.

38. The government's actions have placed a large strain on LULAC, especially as we seek to ensure that voters are informed and ready for the midterm election. This strain on LULAC's resources is even more acute given that the election is only a few days away and the federal government began its efforts to force states and counties to review voter lists only recently.

39. The increased strain on LULAC's resources will be made worse if the government expands its efforts to disclose and weaponize voter data to additional states beyond California and Washington.

40. The strain will be greater still if the federal government succeeds in some or all of its efforts to force states to comply with its election-related demands. If the federal government succeeds in compelling California, Washington, and potentially other jurisdictions to change their election rules, for instance, LULAC would likely be forced to divert volunteers and other resources to those states.

41. If any of the federal government's attempts are successful, LULAC will have to rush to update our voter education materials, alert affected members, and help members understand what options they have if their ballots are challenged. Given the proximity to Election Day, LULAC is

concerned that it will be unable to reach everyone affected and it will have to work overtime to help affected constituents.

42. LULAC would also need to change its voter protection efforts by assisting impacted members and helping them comply with whatever citizenship requirements are imposed on them. Undertaking this kind of enormous effort in the days leading up to Election Day will drain the resources and staff time of LULAC's leadership. If leadership is unable to update its educational materials, then LULAC will be unable to reach its impacted members and constituents. That will severely undermine all the work LULAC has put into civic engagement efforts leading up to this election.

43. After the election, the federal government's efforts will continue to impact LULAC's involvement in voting-related issues. Post-election, we will continue monitoring incidents, documenting complaints, and working with our legal partners in the days and weeks that follow. That work will be severely affected if the federal government succeeds in its efforts.

44. For example, on November 3, LULAC will operate its National Election Protection center in Washington, D.C., with approximately 60 volunteers helping to monitor election-related developments, document incidents, verify complaints with state and local council leaders, and coordinate with legal partners when problems arise. We also operate our Election Protection Incident Report and Dashboard at https://vamosavotar.org/report. The federal government's actions are creating a new category of voter concerns that our team must prepare to address, including reports of ballots being segregated or challenged based on alleged citizenship status.

45. If the federal government's election administration efforts are successful, we would have to devote more resources to assisting or advising voters on how to "cure" segregated ballots and confirm their citizenship to election officials. That work would also pull our resources away from our other organizational priorities.

46. A major goal of our civic engagement work is to encourage all eligible voters to be informed and to exercise their rights as American citizens by participating in the electoral process. That work could become significantly more difficult if our members and constituents believe their personal data will be shared and used to prevent their ballots from being counted, or that their citizenship will be subjected to additional, unwarranted scrutiny simply because they registered and attempted to vote.

47. To my knowledge, the federal government did not publish a System of Records Notice or provide an opportunity for public comment in connection with its collection and use of voter data. As a result, LULAC was not aware of this policy, does not know how federal agencies are using its members' data, and did not have an opportunity to provide public comment. Further, because, as far as I am aware, no System of Records Notice was published, LULAC cannot provide accurate information to its members about how their data is being used by the federal government and clear up their confusion. Had LULAC had an opportunity to provide input, it would have provided public comment expressing its concerns with the federal government's actions, just as it did with the modified SAVE program.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 28, 2026.

Juan Proaño